CONDON & FORSYTH, LLP
7 Times Square
New York, New York 10036
(212) 894-6778

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
BRIESE SCHIFFAHRTS GMBH & CO. KG MS
"NORDEROOG",

                                        Plaintiff,

                    - against -

SHANDONG PROVINCE YANTAI
INTERNATIONAL MARINE SHIPPING CO.,

                                        Defendant.

-----------------------------------------------------------------X

**08 Civ. 06339 (NRB)**

**AMENDED VERIFIED
COMPLAINT
AND RULE B ATTACHMENT**

Plaintiff BRIESE SCHIFFAHRTS GMBH & CO. KG MS "NORDEROOG" ("BRIESE") by its attorneys, CONDON & FORSYTH, LLP, as and for its Amended Verified Complaint against Defendant, SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO. ("SYMS") alleges upon information and belief, as follows:

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333. Jurisdiction is also proper pursuant to the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2.     Venue is proper under 28 U.S.C. § 1391 (d) because Defendant SYMS is an alien.

3.     Plaintiff, BRIESE, was and is now a corporation organized and existing under the laws of a foreign country, with its principal place of business located in Leer,

Germany, who was and now is the disponent owner of the M/V NORDEROOG a/k/a M/V SYMS PEONIA, a general merchant vessel in the carriage of goods for hire.

4.      Upon information and belief, Defendant SYMS is a corporation organized and existing under the laws of a foreign country, with its principal place of business located in Shandong Province, People's Republic of China.

## AS FOR A FIRST CAUSE OF ACTION FOR
## BREACH OF CONTRACT AGAINST DEFENDANT

5.      On June 1, 2004, SYMS entered into a time charter with BRIESE, through its agents, CONSLOR SHIPMANAGEMENT GMBH and BBC CHARTERING AND LOGISITIC GMBH & CO. K.G. for the charter of the NORDEROOG, which was to be later renamed the SYMS PEONIA. The terms of the charter, including all addendums and riders, are plead herein as if copied *in extenso* and are attached as "Exhibit A".

6.      Although BRIESE fulfilled all of its duties under the charter, SYMS has failed to do so, resulting in damages which, despite amicable demand, SYMS refuses to pay or otherwise secure BRIESE'S claims.

7.      As a result of SYMS, breach of charter, BRIESE has suffered and will continue to suffer damages in the sum of $269,319.09 as best as can now be estimated, exclusive of interest, attorneys' fees and all other equitable relief this Court deems fit to provide.

8.      According to the Rider Clause 51 of the charter party, disputes arising from the charter shall be referred to arbitration in London, with English law to apply.

9.      Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law. As best as can now be estimated, BRIESE expects to recover the following amounts:

2

| | | |
|---|---|---|
| A. | On the principal claim | $269,319.09 |
| B. | 2 years compounded interest at 5% per annum | $27,605.02 |
| C. | Arbitrator's fees and expenses | $35,000.00 |
| D. | Attorneys' fees and expenses | $55,000.00 |
| | **Total** | **$386,924.11** |

## APPLICATION FOR ISSUANCE OF
## A RULE B ATTACHMENT

10.     Plaintiff repeats and re-alleges each and every one of the foregoing allegations as though fully set forth at length.

11.     With respect to SYMS, this is a Complaint, *in personam*, with a prayer for process and maritime attachment and garnishment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, to which BRIESE is entitled.

12.     After due investigation, SYMS cannot be found within this District within the meaning of Rule B of the Supplemental Rules, and BRIESE has made a good faith effort to locate the Defendant in this District.  Upon information and belief, however, SYMS has or will have during the pendency of this action assets, comprising inter alia, cash, funds, credits, debts, wire transfers, accounts, letters of credit, freight, sub-freights, charter hire and/or sub-charter hire, of belonging to, due or for the benefit of SYMS, ("assets"), including but not limited to assets at, being transferred through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein, within this District and subject to the jurisdiction of this Court in the hands of garnishees, including but not limited to the Bank of New York Company, Inc., HSBC (USA), Bank of America, Wachovia, Deutsche Bank, Calyon, BNP Paribas, Citibank, American Express Bank, J.P.

Morgan Chase Bank National Association, UBS AG, Barclay's Bank, Credit Suisse, Bank of China, Bank of Communications, Bank of East Asia, Mega International Commercial Bank Co. and/or Standard Chartered Bank, which assets are due and owing to BRIESE.

13.    BRIESE is not seeking this attachment for the purpose of injuring or harassing the Defendant.

14.    BRIESE will be prejudiced in its recovery against Defendant absent a process of attachment.

15.    BRIESE seeks an Order from this Court directing the Clerk of Court to issue a Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and the Federal Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching *inter alia*, any assets of SYMS, which may be found in this District, specifically those found and held by said garnishees, for the purposes of obtaining personal jurisdiction over SYMS, and/or to secure its claim(s) in arbitration.

**WHEREFORE**, BRIESE SCHIFFAHRTS GMBH & CO. KG MS "NORDEROOG", prays:

A.    That due process according to the practice of this Court in admiralty jurisdiction be issued against the Defendant SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO. citing it to appear and answer under oath all matters alleged;

B.    That since the Defendant cannot be found within this District, pursuant to Supplemental Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and as further requested in the attached Affidavit in Support of Prayer for

4

Maritime Attachment, that this Court issue an Order directing the Clerk to issue Process of Maritime Attachment and Garnishment, attaching all tangible or intangible property in whatever form, including but not limited to cash, goods, chattels, credits, debts, wire transfers, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, bills of lading, effects, monies and debts, or any funds held by the aforementioned garnishees, including assets at, being transferred through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein, including, but not limited to the Bank of New York Company, Inc., HSBC (USA), Bank of America, Wachovia, Deutsche Bank, Calyon, BNP Paribas, Citibank, American Express Bank, J.P. Morgan Chase Bank National Association, UBS AG, Barclay's Bank, Credit Suisse, Bank of China, Bank of Communications, Bank of East Asia, Mega International Commercial Bank Co. and/or Standard Chartered Bank, which are believed to be due and owing to the Plaintiff in the amount of $386,924.11 to satisfy and/or secure Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B to answer the matters alleged in the Complaint;

That this Court maintain jurisdiction over this matter through the entry of judgment or award, for any current claims, or those which may arise in the future, including any appeals; and

5

That judgment be granted in favor of Plaintiff and that this Court award any other equitable relief that this Court deems fit, including costs, interest and reasonable attorneys' fees.

Dated:  New York, New York
        July 28, 2008

                                    CONDON & FORSYTH LLP

                                    *Attorneys for Plaintiff*


                                    By: _____
                                        Lili F. Beneda (LB 1879)
                                        7 Times Square, 18th Floor
                                        New York, New York 10036
                                        Telephone: (212) 894-6778
                                        Facsimile: (212) 597-6721

## **VERIFICATION**

Lili F. Beneda declares and states that she is an associate in the law firm of Condon & Forsyth, LLP, attorneys for plaintiff in this action, and that the foregoing Verified Complaint is true to the best of her information and belief; that the ground of her belief as to all matters not stated upon knowledge is information furnished to her to by Plaintiff and; that the reason why the Verification is not made by Plaintiff is that Plaintiff is a corporation none of whose officers or directors are present within the District.

I declare and state under penalty of perjury that the foregoing is true and correct.

Executed on July 28, 2008

_____
Lili F. Beneda

# EXHIBIT "A"



# Time Charter

### Government Form

*Approved by the New York Produce Exchange*



EXHIBIT
A



we here consent on behalf of the said Charter we also place upon any representation or omission of the Charter

30. Any addition or omission of all the terms must payable to                Owners ..

we the here consent and do hereby make this Charter

Additional Clauses Number 38 to 111 inclusive both Sheoted Charter and Rider from Charter, attached Clause Documents and Rider form to Rider Collision Clause as attached hereto are deemed to be fully incorporated in this Charter Party.

Charterers: ........................................................

Owners: ........................................................



REKLUB

<u>RIDER CLAUSES TO M/V "NORDEROOG"</u>
SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.
CHARTER PARTY DATED 1ST JUNE, 2004

29. Inspection - Certificate at Calling Ports

Vessel's equipment shall comply with the regulations of the countries in which Vessel will be employed and Owners are to ensure that Vessel is at all times in possession of valid and up-to-date certificates of efficiency to comply with such regulations.

Owners are obliged to deliver and keep the Vessel, her crew and anything pertaining hereto supplied with up to date and complete certificates and approvals and equipment and fittings, enabling Vessel and her crew to load, carry and discharge all cargoes permitted under this Charter Party, and to receive bunkers within the trading limits of this Charter Party. For oil pollution certificates, Clause 55 to apply.

If stevedores, longshoremen or other workmen are not permitted to work due to failure of Master and/or Owners and/or Owners' Agents to comply with regulations, or because Vessel is not in possession of such valid and up-to-date certificates of efficiency, then Charterers may suspend hire for the time thereby lost and Owners to pay all proven direct resulting extra expenses incurred incidental to and resulting from such failure.

Vessel to comply with the Safety and Health Regulations and all current requirements at all ports of call during the currency of this Charter and it is the responsibility of the Master and Owners to arrange for required vaccinations and to keep onboard corresponding certificates.

30. Labour Boycott

In the event of loss of time due to blockade or boycott of the Vessel at any port or place arising from terms and conditions on which members of crew are employed, payment of hire shall cease for the time thereby lost, and Owners to pay all direct/proven expenses incurred incidentally due to and resulting from such blockage or boycott. Owners warrant that the Vessel is not blacklisted by any country within the trading limits of this Charter Party.

31. Vessel's Light for Night Work

Vessel to provide and maintain free of expense to Charterers sufficient and efficient light, as on board, to permit simultaneous cargo works at night at all hatches at the same time unless electrical cluster from shore are compulsory in which case same to be for Charterers' account.

32. Ballast Voyages

Owners guarantee that Vessel can safely undertake voyages in ballast without carrying solid ballast, but with fuel and water ballast only.

33. Fumigation - Cargo Gear - Putting Back - Off Hire Bunkers - Crane Breakdown - Strike/Arrest

a) Fumigation-Deratization

Vessel to be delivered with valid deratization exemption certificate on board and if such does not cover the whole period or time charter and fumigation and/or deratization is necessary, cost of same and demurrage to be for Owners' account.



**REKLUB**

RIDER CLAUSES TO M/V "NORDEROOG"
SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.
CHARTER PARTY DATED 1ST JUNE , 2004

b)  Cargo Gear Certificate

Vessels cargo gear and all other equipment shall comply with the regulations of the countries in which Vessel will be employed and Owners to ensure that Vessel is at all times in possession of all valid and up-to-date certificates of efficiency to comply with such regulations.

c)  Putting Back/Deviation

If during the currency of this Charter, Vessel should put back whilst on voyage by reason of an accident or breakdown, or there is any deviation during the course of the voyage or any loss of time caused by sickness of or accident to crew or any person on board Vessel(other than supercargo travelling under Charters auspices) hire shall be suspended from time of her putting back until she is again in the same or, at Charterers discretion, an equivalent position and voyage resumed there from : or in the event of putting back from berth or an anchorage, from time of last line at a discharging berth/anchorage until time of first line at a loading berth/anchorage, or for time actually so lost as the case may be, and cost or extra bunkers consumed and all proven direct resulting extra expenses resulting there from, if any, shall be for Owners' account.

d)  Crane Breakdown

The Owners undertake that the written instructions will be posted in the crane cabin regarding the safe operating modes and conditions. The Charterers or Charterers' stevedores or Charterers' agents/servants excluding Master/Crew shall familiarize themselves with the proper operation of the Vessel's cargo gear (cranes) prior to operating same.

Any and all damages/costs/expenses/time loss caused to Owners as a result of mis-handling of cargo gear by Charterers or Charterers' stevedores or Charterers' agents/servants excluding Master/Crew shall be for the account of the Charterers.

Any and all damages/costs/expenses/time loss caused to Charterers as a result of Owners and/or master's mis-instructions shall be for the account of the Owners.

In the event of disabled cargo handling gear, or insufficient power to operate the same, the vessel is to be considered to be off hire to the extent that time is actually lost to the Charterers, unless such disablement or insufficiency of power is caused by the Charterers or Charterers' agents/servants excluding Master/Crew. If required by the Charterers, the Owners shall bear the cost of hiring shore gear in lieu thereof, in which case the vessl shall remain on hire. Daily hire for shore gear not to exceed Vessel's daily hire.

e)  Strike/Arrest

In the event that Vessel is delayed or rendered inoperative by strikes, labour stoppages or any other difficulties due to Vessel's flag, Ownership, management, registry, officers and crew or lack of their health certificates or trading prior to Vessel's coming on charter including cargoes so carried, such time lost to be considered as off-hire.





REKLUB

RIDER CLAUSES TO M/V "NORDERООG"
SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.
CHARTER PARTY DATED 1ST JUNE, 2004

Should Vessel be arrested during the currency of this charter at the suit of any person having or purporting to have a claim against or any interest in Vessel, unless resulting from reasons falling under Charters responsibilities, hire under this charter shall not be payable in respect of any period whilst Vessel remains under arrest or any period during which Charterers are deprived full use of the Vessel.

f)  Bunker Consumption During Off-hire

The value of bunkers consumed during any off-hire period under the Charter Party shall be for Owners' account, calculated at current prices at the latest bunkering ports to extent for the Charterers.

31. P & I Cover/Cargo Claim Handling

Owners guarantee that the Vessel is entered with and shall remain entered for the duration of this charter, into a P&I Club for full cover in respect of protection and indemnity risks.

Charterers guarantee that they have arranged for and shall continue to have for the duration of this charter, a full cover for time charter liabilities.

Notwithstanding anything in this Charter Party to the contrary, it is expressly agreed, that the Owners remain responsible for all personal injury to the extent of a full ship Owners P&I cover. Owners to remain fully P&I covered for cargo claims, for which Owners could be made responsible under the terms of the Charter Party.

Owners P&I Club is: Gard P&I Club.

Charterers P&I Club is: China Shipowners Mutual Assurance Association.

Cargo claims to be settled between Charterers and Owners in accordance with the Inter-Club New York Produce Exchange Agreement 1996 and latest amendments thereto.

35. Financial Responsibility In Respect of Pollution

(Pollution Charter Party Clause issued by INT Group of P+I Clubs Sept 1996)

1.  Owners warrant that throughout the currency of this charter they will provide the Vessel with the following certificates

a)  Deleted

b)  Certificates issued pursuant to section 1018(a) of the OE Pollution Act 1990, and section 108(a) of the Comprehensive Environmental Response, Compensation and Liability Act 1980, as amended, in accordance with part 138 of Coast Guard Regulations 33 CFR, from time to the earliest date upon which the Owners may be required to deliver the vessel into the charter or, if later, the date mentioned

in sub-paragraph (a) above), so long as these can be obtained by the Owners from or by (identify the applicable scheme or schemes)



"Numbering" - Lines                                    - 35 -



<u>RIDER CLAUSES TO M.V. "NORDEROOG"</u>
<u>SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.</u>
<u>CHARTER PARTY DATED 1ST JUNE , 2004</u>

2.  Notwithstanding anything whether printed or typed herein to the contrary:

a)  Save as required for compliance with paragraph (1) hereof, Owners' shall not be required to establish or maintain financial security or responsibility in respect of oil or other pollution damage to enable the vessel lawfully to enter, remain in or leave any port, place, territorial or contiguous waters of any country, state or territory in performance of this charter.

b)  Charterers shall indemnify Owners and hold them harmless in respect of any loss, damage, liability or expense (including but not limited to the costs of any delay incurred by the vessel as a result of any failure by the Charterers promptly to give alternative voyage orders) whatsoever and howsoever arising which Owners may sustain by reason of any requirement to establish or maintain financial security or responsibility in order to enter, remain in or leave any port, place or waters, other than to the extent provided in paragraph (1) hereof

c)  Owners shall not be liable for any loss, damage, liability or expense whatsoever and howsoever arising which Charterers and/or the holders of any Bill of Lading issued pursuant to this charter may sustain by reason of any requirement to establish or maintain financial security or responsibility in order to enter, remain in or leave any port, place or waters, other than to the extent provided in paragraph (1) hereof

3.  Charterers warrant that the terms of this clause will be incorporated effectively into any Bill of Lading issued pursuant to this charter.

36. Laycan and Delivery Notices

The Laycan fixed for this Vessel is 0001h local time 1st August 2004 - 2400h local time 30th September 2004.

a)  Owners to narrow the laycan to 20 days spread 60 days in advance, Owners to narrow the laycan to 10 days spread 30 days in advance, Owners to narrow the laycan to 5 days spread 15 days in advance Owners to give 45/30/15 days of approximate notice of delivery and then 7/5/3/2/1 days of definite notice of delivery

b)  Cancelling Clause .

(a) Should the Vessel not be ready to be delivered to charterers on the agreed cancelling date, the Charterers shall have the option of cancelling this Charter Party

(b) Should the Owners anticipate that, despite the exercise of due diligence, the Vessel will not be ready to be delivered to charterers by the cancelling date, they shall notify the Charterers thereof without delay stating the expected date of the Vessel's readiness for delivery to charterers and asking whether the Charterers will exercise their option of cancelling the Charter Party, or agree to a new cancelling date.

Such option must be declared by the Charterers within 2 working days after the receipt of the Owners' notice provided that owners can keep charterers closely informed of Vessel's readiness by updating the delivery schedule every Monday, Wednesday and Friday of each week starting as from 15th June



REKLUB

RIDER CLAUSES TO M/V "NORDEROOG"
SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.
CHARTER PARTY DATED 1ST JUNE , 2004

2004.

If the Charterers do not exercise their option of cancelling, then this Charter Party shall be deemed to remain in force and the new readiness date stated in the Owners notification to the Charterers shall be accepted as a temporary cancelling date. It is clearly understood that the cancelling date is extended upto the given new readiness date , and the final new cancelling date to be redeclared and agreed between Owners and Charterers which shall not be unreasonably with held

The provisions of sub clause (b) of this Clause shall operate only once, and in case of the Vessel's further delay, the Charterers shall have the option of cancelling the Charter Party or per sub clause (a) of this Clause unless otherwise mutually agreed

37. Bunkers on Delivery/Re-delivery

Vessel to be delivered with bunkers as onboard however sufficient to safely reach the nearest main bunkering port, approximate wog 150-350 mt IFO and approximate wog 25 - 60 mt MGO. Vessel to be redelivered with about same quantities as on delivery however sufficient to safely reach the nearest main bunkering port. Charterers will redeliver the Vessel with MDO instead of MGO.

Charterers to take over bunkers on delivery and to pay for it together with first hire payment and have the right to deduct estimated value on bunkers on redelivery at prices USD 220.- for IFO and USD 420.- for MGO respectively AOO.

Any minor differences between quantities Charterers deducted as estimation with last hire payment and value for actual quantity of bunkers on redelivery to be settled together with final hire statement/account at same prices.

Charterers shall have the option to bunker Vessel for their own account prior to delivery, provided same does not interfere with Owners business.

Owners shall have the liberty to bunker Vessel for their account prior to re-delivery, provided not interfering with Charterers operation of the Vessel

38. Hold Condition on Delivery - On/Off Hire Survey

a) Hold condition

Vessel's holds prior to delivery or on arrival at first loadport to be clean, swept, free of infestations, odours and cargo residues and suitable in all respects for the carriage of the maximum described intake of containers and to load any/all permissible cargoes under this charter

In case cleaning of holds should become necessary during the currency of this charter, due to nature of cargo or cargo operations, such cleaning shall be for Charterers account including removal of residues.

On redelivery holds to be in about same condition as on delivery, fair wear and tear and rust excepted

Vessel to deliver with a full set of container lashing/securing units in good working order, sufficient for



REKLUB

RIDER CLAUSES TO M.V. "NORDEROOG"
SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.
CHARTER PARTY DATED 15 JUNE 2004

the maximum described intake of 20 and 40 ft containers on deck/under deck (see also clause 61)

b) On/off hire surveys

A joint on-hire survey in delivery port, or first port after delivery, and a joint off-hire survey in redelivery port to be held and expenses for same to be shared equally between Owners and Charterers

On-hire survey to be in Owners' time and off-hire survey in Charterers' time, unless simultaneously with Charterers' operations

Survey by an independent surveyor acceptable to both parties, to include a statement of bunkers and the lashing and securing materials on board

Delivery and redelivery date/times for purposes of calculating hire to be based on Beijing Shanghai time

39. Reporting etc

During voyages, Master to keep Charterers and/or their Agents informed of Vessel's position and performance in accordance with the instructions received from Charterers. Charterers and their representative, inclusive of supercargo, to have the right to use Vessel's communication facilities Charterers to reimburse Owners for such communications at actual cost

40. Hire Payment

Payment of first hire and bunker value. Payment of first hire and value of bunkers onboard on delivery to be paid within three(3) working days after delivery

Against Charterers' receipt of Owners' original invoices and revised copy of same if there is any error found therein, the original revised invoices to be provided to Charterers before next hire payment, Charterers to remit hire per telegraphic transfer to Owners' following bank account:

BREMER LANDESBANK, BREMEN
GERMAN BANK CODE: 290 500 00
USD ACCOUNT NO.: 140 8999 002
SWIFT CODE : BRLADE22
IBAN: DE6229050000140899900
IN FAVOUR OF : BBC CHARTERING AND LOGISTICS GMBH & CO KG, LEER
            as agents to Owners
NEW YORK CORRESPONDING BANK: CHASE MANHATTEN BANK - SWIFT : CCHASUS33
VAT NR: DE 812 90 1313
Owners' final bank account as per Owners invoice.

41. Late Receipt of Hire Payments

With reference to clause 5(five) it is agreed that the hire is to be considered correctly paid upon confirmation of Owners' corresponding bank that money has been received





**NEKLUB**

<u>RIDER CLAUSES TO M/V "NORDEROOG"</u>
<u>SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.</u>
<u>CHARTER PARTY DATED 1ST JUNE, 2004</u>

If hire has not been paid to Owners in time, Owners to notify Charterers in writing the breach and also with reply direct to Charterers on Fax: +86 535 6295437 and give them three (3) banking days grace to rectify such failure. If the hire is still outstanding after the three (3) days' banking days have passed, the Owners shall be entitled without further notice to withholding the performance of any and all of their obligations hereunder and shall have no responsibility for any consequences thereof, in which case hire shall continue to accrue and any extra expenses directly resulting from such withholding shall be for Charterers' account and responsibility.

### 42. Deductions From Hire

Charterers shall have the liberty to deduct from last hire payment any amount disbursed for Owners' account, off-hire and speed claims, previously agreed by Owner.

Charterers have the further liberty to deduct from last sufficient hire payment, estimated cost of bunkers remaining on board on redelivery, together with a reasonable estimated amount of disbursements for Owners account outstanding, for which vouchers have not yet reached Charterers. Notwithstanding anything stipulated to the contrary in the Charter Party, no deductions other than stipulated in this clause shall be made, unless with the prior written consent of the Owners.

### 43. Loading Instruction

Charterers or their Agents to provide Master with shippers/Agents declared weight of containers, information of containers with special and/or dangerous cargo, requiring special stowage/attentions, as well as total number of containers and destination prior to commencement of loading operation; each port Charterers to be responsible for any damages, delays and expenses as may arise in port or at sea from discrepancy between manifest and actual container weight.

### 44. Breaking I.W.L.

Charterers option to break IWL against payment of any extra insurance including war risk insurance and crew war risk bonus and eventually premium for blocking and trapping.

### 45. Smuggling

Owners to be responsible for any consequences owing to smuggling by Vessel's officers and/or crew. Charterers to be responsible for consequences owing to any smuggling and/or possession of illegal merchandise of their servants, or hidden in the cargo.

### 46. Deleted

### 47. Renaming and Charterers Colors

Charterers have the privilege to rename vessel and/or fly their house flag and to paint and mark all outer, over water areas of the vessel, including funnel and paint Charterers insignia at Vessel's sides in Charterers' colors/standard, at their expenses and time. Charterers to repaint and remark vessel in Owners' colors/standard before redelivery, at Charterers' expense and time. Owners to attend to administrative matters for the applications for both renamings and to present, in due time, respective vouchers supporting

 



REKLUD

RIDER CLAUSES TO M/V "NORDPROOG"
SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.
CHARTER PARTY DATED 1ST JUNE , 2004

expenses incurred

All expenses in connection with such renaming and for later renaming of the vessel to her old name to be for Charterers account. Vessel to be renamed to her old name prior to or upon redelivery. Any change name is subject to Vessels registry's approval.

48. Refund of Insurance Premium

Charterers to have the benefit of any return insurance premium received by Owners from Underwriters(in and when received from Underwriters) by reason of the Vessel being in port for a minimum period of 30 days provided the Vessel is on hire and all requirements under the terms of insurance policy for enjoying the insurance premium return are satisfied and paid to Charterers with approval of Owners.

Bimco Lay-up Clause

The Charterers shall have the option of laying up the Vessel for all or any portion (exceeding 30 days) of the Charter period, in which case hire hereunder shall continue to be paid, but there shall be credited against such hire the whole amount which the Owners shall save(or reasonably should save) during such period of lay-up through reduction in expenses, less any extra expenses to which the Owner is put as a result of such lay-up.In case of lay-up Charterers to arrange for docking of the Vessel at their cost prior to Vessel being put back to service.

49. Outbreak of War

In the event of the outbreak of war(whether there be a declaration of war or not) between two or more of the following countries/areas and affecting Vessel's trading :Great Britain, U.S.A., C.I.S., Germany, Peoples Republic of China, Taiwan Japan, both Owners and Charterers shall have the right of cancelling this Charter Party immediately and Vessel shall proceed to a safe and open port at Charterers option for discharging if required, and the Vessel to be redelivered thereafter and hire shall be paid till the redelivery.

50. Hague Visby Rules/Bimco Hamburg Rules Clause

A reference to the International Convention for the Unification of certain Rules relating to Bills of Lading, dated Brussels, the 25th August 1924 and Hague Rules of as amended by the Protocol signed in Brussels on the 23rd February 1986(the Hague Visby Rules) to be inserted in all Bills of Lading issued hereunder

New Jason and New Both-To-Blame Collision Clause and Clause Paramount, as applicable to apply and form part of this Charter Party and to be incorporated in all Bills of Lading issued hereunder

Bimco Hamburg Rules Clause

Neither the Charterers nor their Agents shall permit the issue of any Bill of Lading, waybill or other document evidencing a contract of carriage (whether or not signed on behalf of the Owners or on the Charterers' behalf or of any sub-Charterer) incorporating where not compulsorily applicable, the Hamburg Rules or any other legislation giving effect to the Hamburg rules or any other legislation imposing liabilities in excess of Hague or Hague/Visby Rules. Charterers shall indemnify the Owners against any liability, loss or damage which may result from any breach of the foregoing provisions of this clause.





REKLUB

<u>RIDER CLAUSES TO M/V "NORDBRIDGE"</u>
<u>SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.</u>
<u>CHARTER PARTY DATED 1ST JUNE, 2004</u>

51. Arbitration: Bimco Standard Law + Arbitration Clause 1998

This contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association ("LMAA") Terms current at the time when the arbitration proceedings are commenced.

The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and give notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on both parties as if he had been appointed by agreement.

Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator.

In case where neither the claim nor any counterclaim exceeds the sum of US$50,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced.

52. Stevedore Damages

Charterers are not to be responsible for damages to the Vessel unless same are notified in writing by the Master at the time of, or latest within 24 hours of, occurrence of damage, to Charterers or Charterers' Agents or supercargo. Master/Owners shall endeavour to obtain from responsible party acknowledgement of such claim. Hidden damages caused to the Vessel during the currency of this Charter Party to be repaired as soon as discovered but latest on redelivery. All stevedore damages affecting Vessel's class, seaworthiness and cargo carrying capability to be repaired immediately on occurrence at Charterers' expense. Other stevedore damages to be repaired at latest during dry docking or annual repair at Charterers' expenses but in any case prior to re-delivery.

53. Double Banking

BIMCO Double Banking Clause

(a)  The Charterers shall have the right, where and when it is customary and safe for vessels of similar size and type to do so, to order the Vessel to go, lie or remain alongside another vessel or vessels of any size or description whatsoever or to order such vessels to come and remain alongside at such safe dock, wharf, anchorage or other place for transhipment, loading or discharging of cargo and/or bunkering.



REKLUB

RIDER CLAUSES TO M/V "NORDEROOG"
SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.
CHARTER PARTY DATED 1ST JUNE . 2004

(b) The Charterers shall pay for and provide such assistance and equipment as may be required to enable any of the operations mentioned in this clause safely to be completed and shall give the Owners such advance notice as they reasonably can of the details of any such operations.

(c) Without prejudice to the generality of the Charterers' rights under (a) and (b), it is expressly agreed that the Master shall have the right to refuse to allow the Vessel to perform as provided in (a) and (b) if in his reasonable opinion it is not safe so to do.

(d) The Owners shall be entitled to insure any deductible under the Vessel's hull policy and the Charterers shall reimburse the Owners any additional premium(s) required by the Vessel's Underwriters and/or the cost of insuring any deductible under the Vessel's hull policy.

(e) The Charterers shall further indemnify the Owners for any costs, damage and liabilities resulting from such operation. The Vessel shall remain on hire for any time lost including periods for repairs as a result of such operation.

54. Dangerous Cargo

Charterers are allowed to load max 1,000 ts IMO dangerous goods, provided packed, labelled, handled, loaded/stowed, discharged in accordance with IMO and all other international and local regulations.

All extra equipment/fittings/insurance to be arranged and paid for by Charterers.

Prior loading of IMO cargo Master to be furnished in writing with all relevant information like IMO number etc.

The following cargoes always to remain excluded:
Livestock, nuclear and/or radioactive materials/fuels/products/wastes (unless for medical purposes provided that they are of such a category as not to endanger the vessel's P&I cover), toxic and/or chemical waste, arms/ammunitions (unless for sports/hunting purposes, or officially declared as government cargoes which to be allowed), explosives (except small quantities of fireworks which to be allowed), asbestos, ferrosilicon, hides, scrap, cargoes banned by United Nations, coins/notes/bloods/notes of any nature, precious or rare metals or stones, banknotes and currency coins and any other form of currency bonds/bonds and other negotiable instruments. Otherwise as per vessel's description, unless otherwise agreed.

55. Agents

The Charterers agree that their Agents will undertake normal/minor ships husbandry as Owners' Agents, free of agency fee, Owners only to pay for services actually rendered. This shall not include any extraordinary business such as crew member desertion or being left in hospital, general average, repairs, damage to vessel and similar major items. In such case Owners shall appoint their own Agents or pay Charterers' Agents the relevant agent's fee.

56. Slow Steaming

Charterers shall have the privilege of slow steaming the Vessel at any speed acceptable to Vessels

Norderoog / Rider                                    19



## RIDER CLAUSES TO M/V "NORDEROOG"
## SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO
## CHARTER PARTY DATED 1ST JUNE , 2001

machinery and hull.

### 57. Gangway Watchman

Watchmen for cargo/containers to be for Charterers' account. Watchmen for Vessel to be for Owners' account unless compulsory, then same to be for Charterers' account.

### 58. Container Clause

Securing of the cargo inside containers and/or other unit load shall be entirely the Charterers' concern and responsibility. Any damage to the Vessel, her tackle, apparel, furniture or anything else resulting from insufficient securing of cargo within containers and/or other unit load shall be repaired at the Charterers' expense and time. Charterers warrant that all containers will be sealed prior to loading.

### 59. Reefer Containers

Vessel to provide electric power as stated by Vessels' description and Master/crew to exercise due diligence in maintaining temperature and other conditions required. Crew to monitor reefer container twice a day weather permitting.

In case any malfunctions of reefer units are found, the Master/crew shall report immediately to Charterers and try for repair/maintenance in accordance with Charterers' instructions, provided spare parts are available for such work and weather permitting. Any spare parts/ time to be for Charterers' account and crew to be considered as Charterer's servants for this task. Owners can not be held responsible for malfunction of reefer containers provided vessel's crew has executed the task as above-mentioned with due diligence. Owners can not be held responsible for malfunction of reefer containers unless resulting from ships failure of supply sufficient electrical power.

### 60. Bimco Linertime Ice Clause

The vessel not to be ordered to nor bound to enter any ice-bound place or any place where lights, lightships, marks and buoys are or are likely to be withdrawn by reason of ice on the Vessel's arrival or where there is risk that ordinarily the Vessel will not be able on account of ice to reach the place or to get out after having completed loading or discharging. The Vessel not to be obliged to force ice, nor to follow ice-breakers when inwards bound, if on account of ice the Master considers it dangerous to remain at the loading or discharging place for fear of the Vessel being frozen in and/or damage, he has the liberty to sail to a convenient open place and await the Charterers' fresh instruction. Detention through any of the above causes to be for the Charterers' account.

### 61. Owners Lashing Gear

Owners on delivery to supply the vessel with a full set of container lashing/securing materials/units which to be maintained/reconditioned by the Vessel throughout the charter period at all times for stowing containers up to maximum quantity of 20/40 ft containers, as per Vessel's description.

Charterers are to be responsible for any lashing gear lost or damaged, ordinary wear and tear excepted, which to be replaced or repaired by Charterers immediately, if possible, provided Charterers receive a



**REKLUB**

RIDER CLAUSES TO MV "NORDEROOG"
SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.
CHARTER PARTY DATED 1ST JUNE, 2004

stevedore damage or loss report (see clause 52) to that Vessel, has a full and complete set of lashing gear on board at all times during the currency of this Charter Party.

62. Errors - Notices Between Parties

To effect errors, Owners or Charterers to give each other at least 48 hours substantiated written notice before exercising their rights under this Charter Party.

63. Vessel's Plans

Owners to make available to Charterers, as soon as practical after fixing and being, clear and legible english language GA, Capacity, Container stowage plans, (where applicable approved by class), loading scale, hydrostatic curves, tankplan, trim and stability tables, operation consumption curves, bay plans, and any other plans, tables, instructions book/s, a complete set of copies of all Vessel's certificates together with a color photograph of the Vessel, for Charterers' purposes.

64. Non-Containerized Cargoes

It is understood that charterers will employ the Vessel in the container trade. Charterers to have the option to also load lawful general breakbulk allowed for a cellular full-container Vessel, provided complying fully with IMO and other relevant regulations. Any extra insurance and/or any extra expenses and/or loss of time to be for Charterers account. Any deck cargo to be loaded at charterers risk and expenses but always as far as Vessels stability permits. Relative extra insurance to be for Charterers account. In case of deck stowage Bills of Lading to be claused accordingly (see CL98).

65. Dues/Taxes

All dues and taxes on cargo and/or freight/Vessel to levied against Vessel due to her having cargo on board to be for Charterers' account (except income tax levied in the country of the Vessel and/or her Owners domicile which to be for Owners' account).

Any taxes/fees that may be levied on the charter-hire by any country or authority, other than income tax and/or other levies/taxes/fees that are normally payable by Owners in the country of Vessel's/Owners domicile and/or registry or residence, shall not be for Owners account.

66. Container Handling Experience.

Master, chief officer and cargo officer to have container handling experience.

67. Quarantine Time / Expenses etc.

Normal quarantine time and expenses to enter the port to be for Charterers account but any time of detention and expenses for quarantine due to pestilence, illness, etc. Of Master, officer and crew to be for Owners account.

It is the responsibility of the Master and the Owners to arrange for vaccinations required for ports of call/ trading area where Vessel is employed and to keep on board corresponding valid certificates.





REKLUB

RIDER CLAUSES TO M/V "NORDEROOG"
SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING, CO.
CHARTER PARTY DATED 1ST JUNE , 2004

Any additional quarantine expense or time due to Charterers having traded Vessel to places considered unhealthy and as a result thereof requiring additional quarantine expenses or waiting time or additional vaccination of crew, at subsequent ports of call, shall be for Charterers account.

68. Stowaway Clause- Bimco Stowaways Clause.

a) (i) The Charterers warrant to exercise due care and diligence in preventing stowaways in gaining access to the Vessel by means of secreting away in the goods and/or container shipped by the Charterers.

(ii) If despite the exercise of due care and diligence by the Charterers, stowaways have gained access to the Vessel by means of secreting away in the goods and/or containers shipped by the Charterers, this shall amount to breach of charter for the consequences of which the charterers shall be liable and shall hold the Owners harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them. Furthermore, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the Charterers' account and the Vessel shall remain on hire.

(iii) Should the Vessel be arrested as a result of the Charterers' breach of charter according to sub-clause(a)(ii)above, the Charterers shall take all reasonable steps to secure that, within a reasonable time, the Vessel is released and at their expense put up bail to secure release of the Vessel.

(b) (i) If, despite the exercise of due care and diligence by the Owners, stowaways have gained access to the Vessel by means other than secreting away in the goods and/or containers shipped by the Charterers, all time lost and all expenses what so ever and howsoever incurred, including fines, shall be for the Owners' account and the Vessel shall be off hire.

(ii) Should the Vessel be arrested as a result of stowaways having gained access to the Vessel by means other than secreting away in the goods and/or containers shipped by Charterers, the Owners shall take all reasonable steps to secure that within a reasonable time, the vessel is released and at their expense put up bail to secure release of the Vessel.

69. War Clause

War Risks Clause for Time Charters, 1993 Code Name: CONWARTIME 1993

(1) For the purpose of this Clause, the words:

(a) Owners shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master and

(b) War Risks shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master

"Norderoog" Hawrs                    - 18 -



REKLUB

## RIDER CLAUSES TO M/V "NORDEROOG"
## SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.
## CHARTER PARTY DATED 1ST JUNE, 2004

and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel

(2) The Vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any water-way or canal, where it appears that the Vessel, her cargo, crew or other persons on board the Vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(3) The Vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerent's right of search and/or confiscation.

(4) (a) The Owners may effect war risks insurance in respect of the Hull and Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks), and the premiums and/or calls therefor shall be for their account.

(b) If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the Vessel is within, or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

(5) If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due.

(6) The Vessel shall have liberty:

(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

(b) to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;





### RIDER CLAUSES TO M/V 'NORDEROOG'
### SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.
### CHARTER PARTY DATED 1ST JUNE, 2004

(b) to divert and discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier.

(c) to divert and call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

(7) If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

(8) If in compliance with any of the provisions of sub-clauses (2) to (7) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charter Party.

### 70. Deleted

### 71. Through and House-to-House Containers

Charterers to keep Owners harmless for any additional expenses and/or damage to containers and/or cargo and for any responsibility if through or House-to-House Bills of Lading are signed, if damage/additional expenses occur after actual discharging from or prior to loading on this Vessel.

In case Charterers' signing any of the above mentioned Bills of Lading except Congenbills of Lading then Charterers always to appear as Carrier in those Bills of Lading.

### 72. Option of Premature Termination

Should the Vessel during the performance of this charter be off-hire for a period of more than thirty(30) consecutive days, Charterers have the option to terminate this Charter Party at the place where it occurs and Vessel shall proceed to a safe port at Charterers' option for discharging if required. Vessel can be redelivered only in case Vessel is empty.

Owners shall have no obligation from Bill of Lading issued under the Charter Party when charter is terminated.

During the currency of this Charter Party, the Vessel is to be trading on Charterers' container service and it is imperative that the Vessel has to keep to schedule. Should the Vessel be persistently delayed by engine or essential gear breakdowns and/or other causes affecting her schedule (it being understood that such causes as grounding, collision, or similar cases are excluded) Charterers shall notify the one who shall take all reasonable steps to rectify problems.

### 73. Weather Routing





RIDER CLAUSES TO M.V. 'NORDPROOF'
SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.
CHARTER PARTY DATED 1ST JUNE, 2001

Charterers may supply Oceanroutes advice to the Master during voyages specified by the Charterers. The Master to comply with the reporting procedure of the routing service selected by Charterers, unless Master considers route as not safe.

74. Inventory of Charterers' Equipment

The Master, as far as possible, to keep a record of all Charterers' gear, equipment and/or stores supplied to the Vessel and to maintain same in good condition. Such gear, equipment and/or stores to be handed over at redelivery of Vessel to Owners or as requested by Charterers. In any case during the period of this charter on off-hire, order or occasion as supplied such gear and/or equipment by Charterers to make good any shortage and/or damage caused about the same as may be negligence of Charterers or their servants involved.

75. Deleted

76. Container Loading

Charterers have the option to load in and/or on all hatches empty and/or full containers but in agreement with the Master with reference to the strength of the hatches and the stability of the Vessel. The crew, as far as weather conditions permit, to daily watch the conditions of the containers carried and relash and/or to tighten the lashings whatever may become necessary during the voyage.

77. Crew Assistance

If necessary but to include but not to be limited to following works and rendering customary assistance by the crew, provided allowed by local rules/prevailing demonstrations.

a) To get the vessel always ready for cargo work to avoid waiting time in any case.
b) Deleted
c) Shifting operation and docking
d) Bunkering
e) Maintaining power while loading and/or discharging
f) Supervision/enabling stevedores to perform the cargo operations
g) Deleted
h) To prepare Vessel's hatches/holds and all lashing/securing materials properly on deck and/or in holds prior to arrival to ports or commencement of operations
i) To pay due attention to the cargo on board throughout the voyage.
j) Loading and ventilating reefer containers of which instructions to be given to the Master/crew by Charterers and their agents prior to loading failing which Owners/Master/Vessel are not to be responsible.

78. Vessel Inspection

Charterers to have the option of holding a condition inspection at any time during the currency of this Charter Party with 14 days notification. The Owners and Master giving every facility and assistance to carry out this inspection which to be carried out without interrupting the working of the Vessel and without incurring expenses for the Owners.



REKLUB

<u>RIDER CLAUSES TO M/V "NORDEROOG"</u>
<u>SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.</u>
<u>CHARTER PARTY DATED 1ST JUNE , 2004</u>

79. Supercargo

In reference to clause 10 of this Charter Party, the Owners to provide a clean and acceptable room available for the supercargo, furnished to the same standard of other officers' cabins on board the Vessel, having also a writing table available

The Charterers supercargo/representative to be afforded every courtesy and co-operation of the Vessel's command and to have free and unlimited access to the whole Vessel including bridge, holds and engine rooms, and also to vessel's tanks including but not limited to bunkers, lubrication oil, sludge, ballast and freshwater tanks, also to the Vessel's deck and engine logbooks, made during the charter period, tank plans, calibration scales and/or other plans as requested/required.

80. Deleted

81. Deleted

82. Privacy

All negotiations and eventual fixture/failure to be kept strictly private and confidential.

83. Description of Vessel

MV NORDEROOG - delivery expected Aug/Sept 04 ex Weihai Shipyard / China

Singledecker - geared - fully cellular (fixed) container vessel with good reefer container intake on / under deck - highest iceclass (E3) -Gibraltar flag - German Management - steelfloored - engine aft - bowthruster fitted (abt 800 kW) - classed according to the highest standard and regulations of the Germanischer Lloyd GL+100 A5 E3 Container Ship + MC AUT /Eequipped for carriage of dangerous goods (SOLAS II-2, reg.54) in hold 1 and 2 class 1 - 9 except 6.2 & 7

Deadweight:
About 17,500 metric tons deadweight all told on about 9.00 m scantling draft saltwater summer freeboard

Main Dimensions
Loa            abt 161,00 meters
LBP            abt 151,00 meters
BM             abt 25,00 meters
Depth to main deck    abt 13,90 meters
Air draft from base line abt 47,50 meters

Measurement International
abt 14,000 GT (London convention)
abt 6717 NT (London convention)

4 holds / 8 hatches - Pontoon type
hatch no.1     abt 12,76 m x 15,88 m
hatch no.2,3,4,5,6,7 abt 12,76 m x 20,84 m

" Norderoog " / Syms                    17 -





REKLUB

RIDER CLAUSES TO M/V "NORDERQOG"
SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO
CHARTER PARTY DATED 1ST JUNE, 2004

hatch no.8      abt 6.52 m x 29.84 m

hold no 1 25.74 m x 15.60 m x 17.30 m (Fr 156-170)
                x 14.60 m (Fr. 171-179)
                x 9.15 m (Fr 179-187)
hold no 2 28.68 m x 26.56 m x 14.60 m
hold no 3 28.68 m x 26.56 m x 14.60 m
hold no 4 19.50 m x 26.56 m x 14.60 m

Container intake :

intake 20 units:
1304 units 20'x8'x8'6"
Stowage:
Hold    492 units    = 62/84/88/106/114/28    1st/2nd/3rd/4th/5th/6th tier
Deck    812 units    = 164/164/168/136/110/72  1st/2nd/3rd/4th/5th/6th tier

Intake 40 units:
603 units 40'x8'x8'6' plus 98 units of 20'
Stowage
Hold    726 units 40' =
          30+12/38+8/44+10/48+10/52+10/14+6  1st/2nd/3rd/4th/5th/6th tier
          plus 40 units of 20'
Deck    377 units 40' =
          77+10/79+10/79+10/60+10/50+10/32+8  1st/2nd/3rd/4th/5th/6th tier
          plus 58 units of 20'

Estimated intake based on homogenous weight basis saltwater - same
(to be reconfirmed by Master/Owners after delivery of the vessel)

homogenous intake:
10 mts = abt 945 TEU
12 mts = abt 930 TEU
14 mts = abt 890 TEU
16 mts = abt 870 TEU

All figures are given subject to vessel overall stability, trim, visibility, canal regulations, and max.
permissible weights.

Reefer capacity :
258 reefer plugs / 132 on deck - 126 in hold no 2 (64) and no 3 (62)
32 A 440 V , 60 Cycles
Each socket box has got a monitoring signal interface to monitor working condition of reefer container
in hold no 2 either reefer conts or imo conts to be loaded

Container stackweights (all in metric tons)
            20'          40'





RIDER CLAUSES TO M/V "NORDEROOG"
SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO
CHARTER PARTY DATED 1ST JUNE , 2004

Tanktop        125     150
Hatch cover/Deck    60     130
Poopdeck        76     100

Distribution of container weights within a single 20/40' stack on deck to comply with the board manual for stowage and lashing of containers approved by Germanischer Lloyd

Cargo gear:
Vessel is fitted with two MacGregor cranes (located amidships)
each 45 metric tons SWL / no.1 max 26 meters outreach
                no.2 max 30 meters outreach
or 40 metric tons SWL / no.1 max 29 meters outreach
                no.2 max 25 meters outreach
one outreach 3.20 metres

Dangerous cargoes
the vessel is able to load dangerous goods cargoes according to vessel's 'Certificate of Compliance for the Carriage of Dangerous Goods' however Owners do not allow to ship cargoes defined under classes 1,1 and 7 of the IMDG code even if allowed by vessel's certificates. All other allowed cargoes mentioned in IMDG code which are not explicit excluded by Owners to be loaded/stowed/shipped/ discharged always in accordance with the IMDG, local-, federal- and Coast Guard regulations and vessel's class and certificates.

Speed
about 19 knots at 9,00 m draft / always subj to trial conditions and good weather /sea conditions (beaufort 2)

Consumption IFO 380 CST
    19 knots   abt 45,0 mts
    18 knots   abt 36,5 mts

MDO consumption.
at sea (no reefers and without elec ventilation) abt 1,8 mts

in case of emergency and/or navigation with reduced speed and/or in restricted areas like approaches, shallow waters and when maneuvering on rivers/channels/canals/in port resp. when shifting bunker consumption might be increased

IFO / MDO Quality :
The fuel oil supplied to be accordance with IFO 380cst ISO Fuel
Standard 8217, 1986/(e) Type RMG 35
The MDO supplied to be accordance with ISO Fuel Standard 8217
1986/(e) Type DMB

Charterers shall supply suitable fuel to enable main propulsion and auxiliary machinery to operate efficiently and without harmful effects. Fuels to contain no waste lubricants or chemicals. All fuel delivered to the vessel has to be a mineral oil product and shall not contain taroil acid / or inorganic acid

" Norderoog " / Synn                    - 15 -

REKLUB

RIDER CLAUSES TO M.V "NORDEROOG"
SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.
CHARTER PARTY DATED 1ST JUNE 2004

substances and to be suitable and to a given duration charge removal, at own risk and cost for Charterers account / time.

Vessel will participate in the DNV fuel quality testing programme. Samples will be taken during each bunkering. Costs involved in the amount of abt USD 50,- per sample to be equally shared between Owners and Charterers.

Charterers to provide sufficient quantity of MDO during seapassage for operating auxilia refrigerators in case of emergency.

Tanks capacities
Fuel          abt 2735 cbm on 0.95 density about
MGO           abt 300 cbm

Due to impracticality of subject tanks, it may be necessary that we may consolidate these tanks in order to meet mixing supplies. Accordingly, should Charterers require these to be claused for capacity, final quantities shall be taken at the sole discretion of the ship's and owner engineer.

Tank Capacities
Ballast water    abt 9000 cbm
Freshwater       abt 500 cbm

Main engine      2 stroke MAN B&W 6S60MC-C with abt 13,500 KW
Aux engines      3x diesel gen sets, each 1020 kW (MDO)
Emergency generator 1 diesel generator 250 kW (MDO)
Bowthruster      abt 800 kW

General Equipment
Forced ventilation in holds with 6 interchanges abt x empty holds Freshwater Evaporator 15 tons output per day Fitted with all modern equipment fully GMDSS fitted Accommodation for 25 persons

All detailed data are to be considered as a rough and are given in good faith but without guarantee and subject to Owners/Shipbuilders' reconfirmation after commissioning/delivery from shipyard. All stability calculations with regards to container load are also always subject to Master's final reconfirmation after vessel's delivery from shipyard.

latest update 16th January 2004

end

84. Caption of Clauses

The caption and headings of clauses he on are inserted for convenience only and shall not be construed to have any substantive effect in the interpretation.

85. Strikes Pilots/Tug Boats etc



RIDER CLAUSES TO M/V ' NORDEROOG'
SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO
CHARTER PARTY DATED 1ST JULY , 2004

Owners are to be responsible for any loss of time or other expenses whatsoever resulting from any acts of pilots, tug boats, linesmen, or other shore labour, unless resulting from Vessel/Owner's failure to comply with the terms of the Charter Party or being caused by reason of Owner's act.

86. Trading Exclusions

Vessel to be employed in lawful trades for the carriage of lawful merchandise only between safe port(s) in safe anchorage(s) ... place(s) where Vessel ... safely ... always within Institute Warranty Limits World Wide, specifically excluding following areas:

Finland ... North Korea, CIS , Cambodia, Australia, New Zealand, U.S. Pacific Island and ... Faroe Islands, Turkey (in case of Cyprus flag only), ... during winter season ... Syria, Lebanon, Liberia, Sierra Leone, Angola including the ports, Zaire respectively Republic of Congo (formerly Zaire), Somalia, Yemen (North and South), Burma, Iran , Iraq , Sri Lanka, Russian CIS Pacific ports, Cuba except US has ceased to ... all open road steads/piers, all places which are not free of ice all any zones/countries under US and/or UN and/or EU ban . No direct call between China and Taiwan, and vice versa . No ice trading/no following are tradicts.

87. Reinsertion In Trading Limits

It is agreed that, from time to time, should the political/trading situation change, the Charterers may ask for reinsertion in trading limits of an excluded country and the Owners can ask for extraction of another excluded country. Both parties agreed not to unreasonably withhold their consent, but Owners reserve the rights to maintain trading status as the governing Charter Party terms.

Owners agreed to call Australia/New Zealand (including in case excluded that Charterers give Owners at least 45 days notice thereof and against payment of extra/item USD 48 000 + for a period of max. 12 months counting from the first call in one out of above countries.

Any trading days in excess of 12 months to count pro rata, i.e. USD 260 + per day.

88. Deleted

89. Deleted

90. Liability Insurance

The Charterers shall not be responsible for loss of life nor personal injury nor arrest or seizure or loss or damage to the Vessel and/or other objects arising from perils insured by customary policies of insurance.

91. Off-Hire

After suspension of hire, from any cause, the Vessel shall be placed again at Charterers' disposal at the same port, or place, or an equidistant position where hire was suspended, if located at sea.

Charterers may, however, at their option accept the Vessel on hire again in such position and at such rate



' Norderoog ' / Bjørn                          21

**REKLUB**

RIDER CLAUSES TO M/V "NORDEROOG"
SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.
CHARTER PARTY DATED 1ST JUNE , 2004

as the vessel may again, in all respects be ready to comply with the orders and directions of the Charterers

During any off-hire period estimated to exceed 8 days, the Owners to give the Charterers not less than 3 (three) days definite notice of resumption of the service.

If the Vessel has been off-hire for a total period of 30 (thirty) consecutive days during this Charter Party, the Charterers are at liberty to cancel the balance of period of this Charter Party, and redelivery shall take place upon Vessel being free of cargo.

92. War Risk Insurance

The Owners warrant that the Vessel shall remain insured throughout this Charter Party against basic war risks with the insurance company as stated in the description clause at Owners expense.

Any additional war risk insurance premiums for trading to areas declared as additional premium areas by Underwriters to be for Charterers' account.

93. Deleted

94. Deleted

95. Deleted

96. Change of Flag/Registry/Sale of Vessel

Owners have the right of change the Vessel's flag and/or registry and/or to sell the Vessel, provided the warranties under the terms of the Charter Party remain unaffected.

97. Stowage/Supervision

The Master shall supervise stowage of the cargo as well as instruct one of his officers to supervise all loading, handling and discharge of cargo and to furnish Charterers or their Agents with stowage plans and all other documents customarily used.

98. Deck Cargo

The full deck is to be at Charterers disposal for cargo, subject to Vessel's stability, trim, visibility and permissible weights. Any non containerized cargo shipped on deck to be at Master's discretion, which however not to be unreasonably withheld, and always carried at Charterers' Risk, expense and responsibility. The respective Bills of Lading to be claused accordingly.

Owners not to be responsible for damages to or loss of cargoes loaded on deck in open top and/or flat rack containers, if caused by weather and/or seawater influence. The respective Bills of Lading to be claused accordingly.

99. Drydocking

Norderoog / / Spms                    36



RIDER CLAUSES TO M/V "NORDEROOG"
SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING. CO.
CHARTER PARTY DATED 1ST JUNE , 2004

No drydocking during the currency of this charter, except in cases of emergency, or if otherwise agreed between the parties.

100. Deleted

101. Registration for Transport of Hazardous Materials

Charterers warrant that they have filed a registration statement with the United States Department of Transportation,Research and Special Programs Administration(RSPA) for certain persons engaged in the offering for transportation and transportation of certain hazardous materials in foreign, intrastate or interstate commerce in accordance with the Hazardous Materials Transportation Uniform Safety Act of 1990(HMTUSA) and will remain so during the duration of this charter. Charterers to be responsible for all permits and registrations for of hazardous and IMO cargoes necessary to enter and/or trade in and out of all ports during the currency of this charter and shall indemnify Owners and hold them harmless in respect of any loss,damage,liability or expense (including fines) incurred to Owners and/or Vessel due to nonfulfilment of the requirements of the RSPA.

102. Insured Risks

Owners to keep the Vessel fully insured against all hull risks as per Institute Time Clauses (hulls) 1.10.1983 including RDC or equivalent conditions and usual deductibles

103. Deleted

104. Bimco Non-Lien Provision Clause

Charterers will not suffer nor permit to be continued, any lien or encumbrance incurred by them or their Agents, which might have priority over the title and interest of the Owners in the Vessel.

In no event shall Charterers procure, or permit to be procured, for the Vessel, any supplies, necessaries or services without previously obtaining a statement signed by an authorized representative of the furnisher thereof, acknowledging that such supplies, necessaries or services are being furnished on the credit of Charterers and not on the credit of the Vessel or of her Owners, and that the furnisher claims no maritime lien on the Vessel therefore

105. Oil Spillage

Charterers will be not held responsible for oil pollution or pollution damage caused by the vessel if the pollution do not arise out of the acts of Charterers and/or Charterers' agents and/or Charterers' servants excluding Crew/Master and/or due to faults of Charterers and/or Charterers' agents and/or Charterers' servants excluding Crew/Master.

106. Self-pilotage

Owners guarantee that Master shall, with full cooperation to charterers, perform the self-pilotage without pilot and tug assistance while Vessel passing channels/sea sights/narrow waters/inner seas/sea bays and/or entering/departing ports/berths subject permitted by local and/or state authorities and always at his

"Norderoog" Clause                          29 -





RIDER CLAUSES TO M/V "NORDEROOG"
SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.
CHARTER PARTY DATED 1ST JUNE , 2004

discretion, but such self pilotage shall not be unreasonably withheld by Master as long as the weather/
safety conditions permit, but compulsory pilotage is always excepted

The bonus for such self-pilotage to be settled directly between Charterers and Master as per charterers'
customary pay to similar vessels.

107. Losses

Whenever under the terms of this contract Owners/Charterers may be responsible for loss of time, costs
and expenses, consequences, these being limited to direct proven and unavoidable expenses. Consequential
losses to be expressedly excluded

108. Extra Insurance

Charterers' option to break IWL against payment of all extra insurance of which premium shall be in line
with the additional premium quoted by Lloyds of London and to be paid by Charterers with next hire
payment after receipt of invoice from Owners Insurance brokers telefax by Owners

Owners to mail to Charterers the original as soon as received but fax copy is sufficient for arrangement of
extra insurance.

In case Charterers calling areas where extra insurance is necessary then Charterers to inform Owners at
least four(4) working days prior entering the respective port/area in order Owners have sufficient time to
arrange for extra insurance coverage.

109. U.S. Customs-Trade Partnership Against Terrorism (C-TPAT) Clause

The Charterers have voluntarily signed the C-TPAT Agreement with the U.S. Customs Service. The
Owners, Master and Crew will use reasonable efforts to assist the Charterers to comply with their
obligations under the C-TPAT Agreement. However, under no circumstances shall the Owners, Master
and Crew be liable for any delays, losses or damages howsoever arising out of any failure to meet the
requirements of the C-TPAT Agreement signed by the Charterers

The Charterers agree to indemnify and hold the Owners, Master and Crew harmless for any claims made
against the Owners, Master and Crew or for any delays, losses, damages, expenses or penalties suffered
by the Owners arising out of the C-TPAT Agreement signed by the Charterers

110. U.S. Security Clause for Time Chartering

If the Vessel calls in the United States, including any U.S. territory, the following provisions shall apply
with respect to any applicable security regulations or measures

Notwithstanding anything else contained in this Charter Party all costs or expenses arising out of or related
to security regulations or measures required by any U.S. authority including, but not limited to, security
guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers'
account, unless such costs or expenses result solely from the Owners' negligence.





RIDER CLAUSES TO M/V "NORDEROOG"
SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.
CHARTER PARTY DATED 1ST JUNE, 2004

11. U.S. Customs 24 Hours Rule Clause for Time Charter Parties

(a)  If loading cargo destined for the US or passing through US ports in transit, the Charterers shall

(i)  Provide all necessary information, upon request by the Charterers to the Owners and/or their agents to enable them to submit a timely and accurate cargo declaration directly to the US Customs; or

(ii)  If permitted by US Customs Regulations ( 9 CFR 4.7) or any subsequent amendments thereto submit a cargo declaration directly to the US Customs and provide the Owners with a copy thereof.

In all circumstances, the cargo declaration must be accurate so that US Customs have the peace of a report of the ship.

(b)  The Charterers assume liability for and shall indemnify, defend and hold harmless the Owners for any loss and/or damage whatsoever (including consequential loss and/or loss of hire, time, losses, penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Charterers' failure to comply with the provisions of this clause (a).

(c)  If the Vessel is detained, attached, seized or arrested as a result of the Charterers' failure to comply with the provisions of sub-clause (a), the Charterers shall provide a bond or other security to ensure the prompt release of the Vessel. Notwithstanding any other provision in this Charter Party to the contrary, the Vessel shall remain on hire.

11.1 ISPS Clause

(a)  (i)  From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

(ii)  Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

(b)  (i)  The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-charterers are likewise provided to the CSO and the SSO/Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision: "The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of this charter party, shall ensure that the contact details of all sub-charterers are likewise provided to the Owners".





RIDER CLAUSES TO M.V. "NORDEROOG"
SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.
CHARTER PARTY DATED 1ST JUNE , 2004

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account.

(c) Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(d) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

113. US Customs Advance Notification/AMS Clause for Time Charter Parties

(a) If the Vessel loads or carries cargo destined for the US or passing through US ports in transit, the Charterers shall comply with the current US Customs regulations (19 CFR 4.7) or any subsequent amendments thereto and shall undertake the role of carrier for the purposes of such regulations and shall, in their own name, time and expense:

i) Have in place a SCAC (Standard Carrier Alpha Code);
ii) Have in place an ICB (International Carrier Bond);
iii) Provide the Owners with a timely confirmation of i) and ii) above, and
iv) Submit a cargo declaration by AMS (Automated Manifest System) to the US Customs and provide the Owners at the same time with a copy thereof.

(b) The Charterers assume liability for and shall indemnify, defend and hold harmless the Owners against any loss and/or damage whatsoever (including consequential loss and/or damage) and/or any expenses, fines, penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Charterers' failure to comply with any of the provisions of sub-clause (a). Should such failure result in any delay then, notwithstanding any provision in this Charter Party to the contrary, the Vessel shall remain on hire.

(c) If the Charterers' ICB is used to meet any penalties, duties, taxes or other charges which are solely the responsibility of the Owners, the Owners shall promptly reimburse the Charterers for those amounts.

(d) The assumption of the role of carrier by the Charterers pursuant to this Clause and for the purpose of the US Customs Regulations (19 CFR 4.7) shall be without prejudice to the identity of carrier under any bill of lading, other contract, law or regulation.

114. Off-hire Periods

Charterers have the option to add on the charter period any part of off-hire periods.

* * * * *



REKLUB

### RIDER CLAUSES TO M/V "NORDBROOG"
### SHANDONG PROVINCE YANTAI INTERNATIONAL MARINE SHIPPING CO.
### CHARTER PARTY DATED 1ST JUNE , 2004

#### NEW BOTH TO BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is involved while performing this Charter Party fall to be determined in accordance with the laws of the United States of America, the following clause shall apply.

#### BOTH TO BLAME COLLISION CLAUSE

"If the ship comes into collision with another ship as result of the negligence of the other ship and any act neglect or default of the Master, mariner, pilot or the servants of the carrier in the navigation or in the management of the ship, the Owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non carrying ship or her Owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the Owner of the said goods, paid or payable by the other non carrying ship or her Owners to the Owners of the said goods and set off, recouped or recovered by the other or non-carrying ship or her Owners as part other claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact "

And the Charterer shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause

- End -

